FILED
2024 Jun-28 AM 08:18
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

| | | |
|---|---|---|
| JOSHUA BOWEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 6:23-cv-578-GMB |
| | ) | |
| MARTIN O'MALLEY, Commissioner | ) | |
| of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

On August 19, 2020, Plaintiff Joshua Bowen filed an application for a period of disability and disability insurance benefits ("DIB"). Additionally, he filed an application for supplemental security income ("SSI") on March 4, 2021. His alleged disability onset date is August 7, 2020. Bowen's applications for benefits were denied at the initial administrative level and upon reconsideration. He then requested a hearing before an Administrative Law Judge ("ALJ"). The ALJ held a hearing on July 26, 2022, and denied Bowen's claims on September 15, 2022. Bowen requested a review of the ALJ's decision by the Appeals Council, which declined review on March 6, 2023. As a result, the ALJ's decision became the final decision of the Commissioner of the Social Security Administration (the "Commissioner") as of March 6, 2023.

Bowen's case is now before the court for review pursuant to 42 U.S.C.

§§ 405(g) and 1383(c)(3).  Under 28 U.S.C. § 636(c)(1) and Rule 73 of the Federal Rules of Civil Procedure, the parties have consented to the full jurisdiction of a United States Magistrate Judge. Doc. 14.  Based on a review of the parties' submissions, the relevant law, and the record as a whole, the court concludes that the decision of the Commissioner is due to be affirmed.

## I.  STANDARD OF REVIEW[1]

The court reviews a Social Security appeal to determine whether the Commissioner's decision "is supported by substantial evidence and based upon proper legal standards." *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997). The court will reverse the Commissioner's decision if it is convinced that the decision was not supported by substantial evidence or that the proper legal standards were not applied. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991).  The court "may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner," but rather "must defer to the Commissioner's decision if it is supported by substantial evidence." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1997) (citation and internal quotation marks omitted). "Even if the evidence preponderates against the Secretary's factual findings, [the

---

[1] In general, the legal standards are the same whether a claimant seeks DIB or SSI.  However, separate, parallel statutes and regulations exist for DIB and SSI claims.  Therefore, citations in this opinion should be considered to reference the appropriate parallel provision as context dictates. The same applies to citations for statutes or regulations found in excerpted court decisions.

court] must affirm if the decision reached is supported by substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). Moreover, reversal is not warranted even if the court itself would have reached a result contrary to that of the factfinder. *See Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

The substantial evidence standard is met "if a reasonable person would accept the evidence in the record as adequate to support the challenged conclusion." *Holladay v. Bowen*, 848 F.2d 1206, 1208 (11th Cir. 1988) (quoting *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir. 1983)). The requisite evidentiary showing has been described as "more than a scintilla, but less than a preponderance." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The court must scrutinize the entire record to determine the reasonableness of the decision reached and cannot "act as [an] automaton[] in reviewing the [Commissioner's] decision." *Hale v. Bowen*, 831 F.2d 1007, 1010 (11th Cir. 1987). Thus, the court must consider evidence both favorable and unfavorable to the Commissioner's decision. *Swindle v. Sullivan*, 914 F.2d 222, 225 (11th Cir. 1990).

The court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Grant v. Astrue*, 255 F. App'x 374, 375–76 (11th Cir. 2007) (citing *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994)). There is no presumption that the

Commissioner's conclusions of law are valid. *Id.*

## II.  STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits, a claimant must show the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 416(i).  A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).  Bowen bears the burden of proving that he is disabled and is responsible for producing evidence sufficient to support his claim. *See Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).

A determination of disability under the Social Security Act requires a five-step analysis. 20 C.F.R. § 404.1520(a).  The Commissioner must determine in sequence:

(1) Is the claimant presently unable to engage in substantial gainful activity?
(2) Are the claimant's impairments severe?
(3) Do the claimant's impairments satisfy or medically equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
(4) Is the claimant unable to perform his former occupation?
(5) Is the claimant unable to perform other work given his residual functional capacity, age, education, and work experience?

*See Frame v. Comm'r, Soc. Sec. Admin.*, 596 F. App'x 908, 910 (11th Cir. 2015). "An affirmative answer to any of the above questions leads either to the next question, or, [at] steps three and five, to a finding of disability.  A negative answer to any question, other than at step three, leads to a determination of 'not disabled.'" *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986) (quoting 20 C.F.R. § 416.920(a)−(f)).  "Once the finding is made that a claimant cannot return to prior work the burden of proof shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citing *Gibson v. Heckler*, 762 F.2d 1516 (11th Cir. 1985)).

## III.  RELEVANT FACTUAL BACKGROUND

Bowen was born on August 14, 1982, and was 40 years old at the time the ALJ issued her decision. R. 22, 189.  His primary complaints center on his anxiety and depression. R. 41–42.  In his disability report, Bowen alleged the following medical conditions: depression, anxiety, migraines, ADD, possible high blood pressure, dry mouth, constant fatigue, and dehydration. R. 244.  Bowen graduated from college and previously worked as a high school teacher and a material handler. R. 33, 35–36, 245, 246, 251, 252.

Bowen is married and has a son who was in elementary school at the time of the hearing. R. 33.  At the hearing, Bowen testified that he does not drive because he is too nervous and anxious and "keep[s] picturing the car wrecking." R. 41–42.

He also testified that he has "a sense of unreality a lot of times." R. 42.  Bowen has issues with his short-term memory, including difficulty remembering conversations and movies he has watched. R. 43.  He even forgets to tell his doctors about his short-term memory issues. R. 43.  Bowen sets alarms on his phone to remind him to do daily activities like unload the dishwasher, take a shower, and eat. R. 43.  He enjoys painting but has a difficult time finishing his paintings. R. 40, 44.  He startles easily, cries a lot, cannot get "intrusive thoughts" out of his head, and has a hard time following instructions. R. 46–47.  Bowen explained that he has good days and bad days, but the bad days by far outnumber the good ones. R. 44–45.  He has bad days five or six times in a week. R. 46.  And he has days when he feels like he cannot do anything. R. 45.  On some bad days, all he can think about is his death. R. 46.

Among other records, Bowen submitted mental health records from psychiatrist Dr. Timothy Whalen in support of his application. R. 343–48, 356–59, 422–75.  During the relevant time period, Dr. Whalen treated Bowen for major depression disorder, Attention-Deficit Hyperactivity Disorder, and generalized anxiety disorder.  Throughout 2020 and 2021, Dr. Whalen consistently found Bowen to be in a "down" mood with an anxious affect, but observed that his grooming, eye contact, dress, speech, thought process, memory, judgment, and insight remained good. R. 347, 357–58, 441, 453.  For example, in January 2020, Bowen endorsed feelings of frustration with what he perceived as irrational irritation and anxiety.

R. 464.  Dr. Whalen observed, among other things, that Bowen had "no thought disorder[,] mood fairly good[,] . . . and memory intact[,] good fund of knowledge[,] good insight and judgment." R. 464.  The next month Bowen endorsed feeling more depressed and anxious, but Dr. Whalen again found his mood to be "fairly good" and that he was "alert and oriented to person, place and time" with "memory intact[,] good fund of knowledge[,] good insight and judgment." R. 462.

In August 2020, Bowen again reported feeling tired, anxious, and depressed and that he had broken down emotionally at work twice in two weeks. R. 451, 453. Dr. Whalen noted his "anxious expression constituently down but also labile tears off and on."  R. 451, 453.  Dr. Whalen's general observations remained the same: Bowen had his "memory intact[,] good fund of knowledge[,] good insight and judgment." R. 451, 453.  In November 2020, Dr. Whalen observed that Bowen was frustrated, stressed, and had a depressed mood, but retained fair attention and concentration. R. 446.

Dr. Whalen's notes and observations from January 2021 remained similar to previous reports. R. 444.  In April 2021, Bowen reported feeling anxious, that he could not do anything right, and was having trouble with his memory. R. 436, 439. Dr. Whalen adjusted Bowen's medication, and Bowen reported improvement by the end of the month. R. 344, 347, 436.  In late August 2021, Bowen reported that he had been feeling "pretty well" and was working on a painting of his son and cat.

R. 357.  In November 2021, Dr. Whalen again adjusted Bowen's medication when he reported a down mood, but on exam Dr. Whalen noted that he had a labile affect and no other psychological abnormalities. R. 431–32.  Bowen complained that his improvements were only temporary. R. 431.

When Bowen complained of suicidal thoughts in December 2021, Dr. Whalen added Abilify to his medications. R. 428–29.  Although Bowen complained in December 2021 about his poor memory, on exam Dr. Whalen found his memory to be intact and no evidence of thought disorders. R. 425.  In March 2022, Bowen reported that he could not get projects started or completed and that he was "unbearably anxious when in crowds." R. 471.  Throughout the first six months of 2022, however, Dr. Whalen continued to observe Bowen's normal status except for an anxious affect. R. 468, 471.

The ALJ issued her decision on September 15, 2022. R. 22.  Under step one of the five-step evaluation process, she found that Bowen met the insured status requirements through December 31, 2025, and had not engaged in substantial gainful activity since his alleged onset date of August 7, 2020. R. 15.  The ALJ concluded that Bowen suffered from the severe impairment of generalized anxiety disorder, major depressive disorder, and attention deficit hyperactivity disorder ("ADHD").[2]

---

[2] The ALJ found Bowen's other alleged impairments to be non-severe. R. 15.  Bowen does not challenge these findings.

R. 15.  The ALJ noted that Bowen's medically determinable impairments cause more than minimal limitations to his ability to perform basic work activities. R. 15.  But the ALJ concluded at step three of the analysis that none of Bowen's impairments satisfied or medically equaled the severity of one of those listed in the applicable regulations. R. 15–17.

Before proceeding to the fourth step, the ALJ determined that Bowen had the residual functional capacity ("RFC") to perform a limited range of work at all exertion levels. R. 17.  More specifically, the ALJ found that Bowen had the following work limitations:

> [H]e can understand, remember, and perform simple, one-to-three step instructions and tasks; and he can concentrate and remain on task sufficiently to complete an eight-hour workday.  The claimant can interact occasionally with coworkers and the general public, and is limited to jobs with infrequent, and well-explained workplace changes.

R. 17.  At the fourth step, the ALJ considered Bowen's age, education, work experience, and RFC in determining that he was not capable of performing his past relevant work as a high school teacher and material handler. R. 20.  However, the ALJ determined that there were other jobs existing in the national economy that Bowen could perform, including work as a dishwasher, laundry worker, or recycler. R 21.  Therefore, the ALJ concluded that Bowen was not disabled within the meaning of the Social Security Act from August 7, 2020, through the date of the decision. R. 22.  Based on these findings, the ALJ denied Bowen's application for

benefits. R. 22.

## IV.  DISCUSSION

Bowen argues that substantial evidence does not support the ALJ's RFC determination. Doc. 12 at 6–13.  More specifically, he contends that there is insufficient evidence to support her determinations about the limitations related his mental illness. Doc. 12 at 7–11.  For the following reasons, the court rejects Bowen's argument and finds that substantial evidence supports the ALJ's determination and that the ALJ applied the proper standards to reach her conclusions.

An RFC determination is an assessment, based on all relevant evidence, of a claimant's ability to work despite his impairments. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir.1997).  "There is no rigid requirement that the ALJ specifically refer to every piece of evidence, so long as the ALJ's decision is not a broad rejection, *i.e.*, where the ALJ does not provide enough reasoning for a reviewing court to conclude that the ALJ considered the claimant's medical condition as a whole." *Packer v. Comm'r, Soc. Sec. Admin.*, 542 F. App'x 890, 891–92 (11th Cir. 2013) (citing *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005)).

The ALJ's determination here provides a thorough discussion, with supporting citations, of Dr. Whalen's treatment notes, the medical documentation from other providers, and Bowen's own testimony about his impairments. R. 16–17, 18–20.  Bowen's argument boils down to his disagreement with the ALJ's

characterization of Dr. Whalen's treatment notes and his own subjective complaints. Doc. 12 at 7–11.   However, Bowen and the ALJ reference the same treatment notes—Bowen focusing on his subjective complaints to Dr. Whalen while the ALJ focused on Dr. Whalen's impressions and observations. *Compare* Doc. 12 at 8–10, *with* R. 18–19.   The ALJ credited both Bowen's complaints and Dr. Whalen's observations when she limited his RFC to jobs with one-to-three step instructions and tasks, infrequent and well-explained workplace changes, and occasional interaction with co-workers and the public.  And the ALJ specifically noted Bowen's subjective complaints of deficient memory, attention, concentration, and judgment, along with an inability to interact effectively with others, but she credited multiple treatment records describing Bowen as cooperative and having an intact memory, attention, concentration, judgment, and insight despite displaying a depressive or anxious mood. R. 344–48, 357–58, 425–65, 468–72.

The court must give great deference to the ALJ's findings of fact. *See Hunter v. Comm'r of Soc. Sec.*, 808 F.3d 818, 822 (11th Cir. 2015) ("In determining whether substantial evidence supports a decision, we give great deference to the ALJ's factfindings.") (citing *Black Diamond Coal Min. Co. v. Dir., OWCP*, 95 F.3d 1079, 1082 (11th Cir. 1996)).  Yet Bowen's argument essentially asks the court to reweigh the evidence.  The court rejects this invitation.  Instead, it is the court's job to review the agency's decision and determine whether its conclusion, as a whole, is supported

by substantial evidence in the record. *Foote v. Chater*, 67 F.3d 1553, 1558 (11th Cir. 1995) (citing 42 U.S.C. § 405(g)).  "If the Commissioner's decision is supported by substantial evidence, this [c]ourt must affirm, even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004).  The court "will not decide facts anew, make credibility determinations, or reweigh the evidence." *Porto v. Acting Comm'r of Soc. Sec.*, 851 F. App'x 142, 145 (11th Cir. 2021) (citing *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011)).

In sum, the ALJ adequately articulated the reasons for her RFC determination and identified the supporting evidence.  The court concludes that substantial evidence supports the ALJ's determination and that the ALJ applied the proper standards to reach her conclusions.

## V.  CONCLUSION

For these reasons, the Commissioner's decision is supported by substantial evidence and based upon the proper legal standards.  Accordingly, the decision of the Commissioner is due to be affirmed.  A final judgment will be entered separately.

DONE and ORDERED on June 28, 2024.

_____
GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE